IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| **DENIS RIVERA** | ) | |
|     a/k/a "Conejo" | ) | |
|         Petitioner | ) | |
| v. | ) | Criminal No.  02-376-A |
| | ) | |
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |

## ORDER

The matter is before the Court on petitioner Denis Rivera's motion to vacate, set aside or correct the sentence, pursuant to 28 U.S.C. § 2255. The government, in lieu of a responsive pleading, requests that its previously-filed opposition to Rivera's motion for appointment of habeas counsel be accepted as its response to the instant motion given that the arguments advanced in both of Rivera's motions are essentially the same. This request is granted, and accordingly the matter is now ripe for disposition. Oral argument is dispensed with because the facts and legal contentions are adequately set forth in the existing record and oral argument would not aid in the decisional process.[1]

### I.

Denis Rivera, also known as "Conejo,"[2] was a member of the criminal gang Mara Salvatrucha or "MS-13," who, along with five other MS-13 members, was indicted for conspiring to murder and murdering twenty year-old Joaquin Diaz. At the time of the murder, September 16, 2001,

---

[1] *See United States v. Yearwood*, 863 F.2d 6, 7 (4th Cir. 1988) (holding that "[a] hearing is not required . . . on a § 2255 motion if the record of the case conclusively shows that petitioner is entitled to no relief").

[2] "Conejo," translated into English, means "rabbit."

Rivera was three days shy of his eighteenth birthday. Accordingly, the government, on August 8, 2002, filed a Juvenile Information charging Rivera with an act of juvenile delinquency, namely the murder of an individual on United States Park Service land, an offense which would have been a violation of 18 U.S.C. §§ 2 and 1111 had Rivera been over eighteen at the time of the offense. Together with the Juvenile Information, the government filed a motion to transfer Rivera from juvenile to adult criminal prosecution pursuant to 18 U.S.C. § 5032, which was granted. *United States v. D.R.*, 225 F. Supp. 2d 694 (E.D. Va. 2002), aff'd 59 Fed. Appx. 530, No. 02-4825, 2003 U.S. App. LEXIS 3574 (4th Cir. Feb. 27, 2003).

Of the numerous pretrial motions considered in this case, only one merits mention here given its relevance to the instant motion, namely, the government's motion to admit the testimony of Rivera's one-time girlfriend, Brenda Paz, to whom Rivera admitted murdering Diaz. Paz, who later agreed to cooperate with the government and entered the Federal Witness Protection Progam ("FWPP"), never had the opportunity to testify as to Rivera's admission because she was murdered approximately four months before the Diaz murder trial. Accordingly, the government moved pursuant to Rule 804(b)(6), Fed. R. Evid.,[3] to have Paz's testimony admitted through her guardian *ad litem* and attorney, Gregory Hunter, to whom Paz had earlier reported Rivera's boast about killing Diaz.[4] This motion was granted on the ground that, as required by Rule 804(b)(6), Fed. R. Evid., the government established by a preponderance of the evidence that Rivera had

---

[3] Rule 804(b)(6) allows admission of a statement "against a party that has engaged or acquiesced in wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness."

[4] Specifically, Rivera bragged to Paz that cutting Diaz's throat was "like cutting up chicken in preparation to cook it."

caused Paz's murder by giving fellow gang members the "green light" to kill Paz. *See United States v. Rivera*, 292 F. Supp. 2d 827 (E.D. Va 2003).

At trial, based on all the testimony adduced, including that of several eye witnesses to the brutal murder,[5] a jury returned a guilty verdict on both counts against Rivera and co-defendant Noe Ramirez-Guardado. Both were subsequently sentenced to life in prison. Rivera appealed his conviction and sentence to the Court of Appeals for the Fourth Circuit, arguing, *inter alia*, error in the granting of the government's Rule 804(b)(6) motion. The Fourth Circuit rejected all of Rivera's arguments and affirmed his conviction and sentence. *See United States v. Rivera*, 412 F.3d 562 (4th Cir. 2005), *cert. denied* 126 S.Ct. 670 (2005).

Now, Rivera seeks collateral review of his conviction, arguing that the government violated *Brady v. Maryland*, 373 U.S. 83, 87 (1963), by not providing him with certain documents containing information he claims could have been used to impeach Paz's testimony (admitted through Hunter).[6] These documents contain information about Paz's mental health (specifically her "attention-seeking profile"), her drug use, her continuing affiliation with MS-13 after entering the FWPP, and payments she received from the U.S. Marshal's Service and the FBI to cover her living expenses during her time in the FWPP. Rivera previously made this same argument in his motion to appoint habeas counsel, which the government opposed on the same

---

[5]Three of the six defendants – Angel Barrera, Andy Salinas, Luis Gamero – were co-conspirators and eyewitnesses. They pled guilty to murdering Diaz, were sentenced to life imprisonment, and testified against Rivera at trial pursuant to written plea agreements. Luis Cartagena, also among those indicted, drove the vehicle that transported Diaz and his killers to the place of the murder. He also testified at trial and was acquitted.

[6]These documents were provided to defense counsel during Rivera's trial for Paz's murder, which took place during the pendency of his appeal of his conviction for Diaz's murder.

grounds it now opposes the instant motion, namely (i) that the same information about Paz's criminal history and mental health was in fact provided to Rivera's counsel before the Diaz trial and (ii) that information about the payments Paz received from the government and her continued affiliation with MS-13 after entering the FWPP is irrelevant because that information postdates her conversation and thus has no bearing on Paz's credibility at the time she made the statement.  In support of its first argument, the government attached to its response a letter sent to Rivera's counsel dated October 27, 2003, which provided information about Paz's criminal history.  As this letter reflects, a report addressing Paz's drug use and mental health was also disclosed to Rivera's counsel.  Rivera did not – and still does not – contend that he did not receive this letter or the report referenced in the letter.[7]  And indeed, as the government points out, Paz's character issues, drug use, criminal history and affiliation with MS-13 were fully disclosed and explored during Hunter's trial testimony.

Rivera's motion to appoint habeas counsel was denied by Order dated April 5, 2006.  While the Order did not reach the merits of Rivera's *Brady* claim, it noted that Rivera might raise that claim in a later § 2255 motion.  Rivera has now done so, and the instant motion is, in all material respects, identical to his motion for appointment of habeas counsel.  In addition, Rivera requests

---

[7]Rivera argues that he did not receive a psychological evaluation of Paz performed by the government prior to her entering the FWPP.  As discussed below, the fact that Rivera did not receive this specific report does not support his *Brady* claim because, as the October 27, 2003 letter reflects, the government provided Rivera with the same, or essentially the same, information contained in that report, albeit in a different form.  The report Rivera attached to the instant motion notes that Paz was not mentally ill but met the criteria for a diagnosis of "Conduct Disorder, Adolescent-Onset Type, Moderate Severity," which, as the report states, "basically refers to antisocial and legal difficulties [Paz] ha[d] experienced as a teenager due to her involvement in a gang."  In other words, this report is simply a restatement of what was obviously well known to defense counsel at the time of trial: Paz had a troubled youth, was involved with MS-13, and had had previous run-ins with law enforcement.

discovery, supplementation of the record, and an evidentiary hearing pursuant to Rules 6, 7 and 8 of the Rules Governing Section 2255 Proceedings.[8] Finally, he requests that his sentence be vacated and the judgment against him be set aside or, in the alternative, that he be granted a new trial or his sentence corrected pursuant to 28 U.S.C. § 2255.

## II.

It is axiomatic under *Brady* that the government is obligated to provide a defendant with any exculpatory evidence in its possession, including evidence that can be used to impeach government witnesses. *Brady*, 373 U.S. at 87; *Giglio v. United States*, 405 U.S. 150, 154 (1972). In *Brady*, the Supreme Court emphasized that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. Yet, "the purpose of the *Brady* rule is not to displace the adversary system as the primary means by which truth is uncovered, but to ensure that a miscarriage of justice does not occur." *United States v. Bagely*, 473 U.S. 667, 676 (1985). Thus, a prosecutor is not required to provide defense counsel with his entire file, but only to disclose evidence that if suppressed would deprive the defendant of a fair trial. *Id*. Furthermore, while due process requires the government to provide the defendant with exculpatory evidence, it "does not require the prosecution to disclose information in a specific form or manner." *United States v. Wooten*, 377 F.3d 1134,

---

[8]The relief Rivera seeks under the Rules Governing Section 2255 Proceedings cannot be granted absent a meritorious claim for relief under § 2255. Because, as explained below, Rivera's § 2255 claim fails, he is not entitled to any of the relief he seeks. Moreover, it is worth noting that Rivera's request for an evidentiary hearing must also be denied because "if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Schriro v. Landrigan,* 127 S. Ct. 1933, 1940 (2007).

1143 (10th Cir. 2004) (holding that government did not violate *Brady* where potentially exculpatory evidence was provided in a memorandum rather than at a pretrial conference); *see Spears v. Mullen*, 343 F.3d 1215, 1257 (10th Cir. 2003) (holding that the state did not violate *Brady* by failing to disclose a typewritten summary of an audiotaped statement made by defendant given that defendant was provided with the audio recording).  As one district court made clear, "*Brady* imposes a duty of disclosure with regard to [exculpatory] *information*, regardless of what form that information might assume . . . ." *Mass v. Quarterman*, 446 F. Supp. 2d 671, 693 (W.D. Tex. 2006) (finding no *Brady* violation where specific reports were not disclosed, but the substance of the information contained in the reports was known by defense counsel); *see* 1 Moore's Federal Practice – Criminal Procedure, § 616.06 ("A Brady violation will not occur, in spite of the prosecution's suppression of evidence, if the defense possessed information before trial from which the substance of the undisclosed evidence could have been determined.").

These principles, applied here, compel the conclusion that the government did not violate its *Brady* duty in this case.  This is so because the government disclosed to Rivera's counsel the information relating to Paz's mental health and criminal history contained in the documents (Petitioner's Exhibits 5 and 6) that Rivera claims were withheld.  In other words, Rivera received what *Brady* requires; he received the essential information contained in the documents, and it is of no moment under *Brady* that he did not receive the specific documents.  Specifically, as the October 27, 2003 letter from Assistant United States Attorney Ronald Walutes reflects, Rivera's counsel was provided with ample information – in both the letter and a report – describing Paz's criminal history, prior drug use, mental health, and affiliation with MS-13.  And, indeed, much of

this information was the subject of Hunter's trial testimony.  The documents that Rivera now contends the government should have provided merely reiterate what was elicited during Hunter's testimony: that Paz abused drugs, was immature, and had a long-standing affection for MS-13.  The jury had before it these issues pertaining to the credibility of Paz's statement and chose, nonetheless, to convict Rivera of Diaz's murder.

   Rivera's *Brady* claim based on a second group of documents fails as well because those documents are irrelevant to the credibility of Paz's statement to Hunter as that statement was made long before Paz began cooperating with the government in its investigation of the Diaz murder.  As Hunter's testimony reflects, Paz made the statement at issue in July 2002, but only began cooperating with the government in its investigation on September 25, 2002, and did not enter the FWPP until November 2002.  Had Paz survived to testify at trial, it is arguable that this information might have been relevant to her credibility at the time of trial, but this information cannot be said to be relevant as to a statement made months before Paz began to cooperate in the Diaz investigation.  *Brady* requires only that the government provide defense counsel with information that might be used to impeach government witnesses; because the information in the second group of documents Rivera contends were withheld was irrelevant to the credibility of Paz's statement, Rivera was not entitled to discovery of it.  Rivera's *Brady* claim thus fails as to the second group of documents.

   Also worth noting is that Rivera's *Brady* claim also fails – with regard to all of the information he claims was withheld – because it is clear none of this information was "material," insofar as there is no reasonable probability that its disclosure would have produced a different outcome at trial.  *See Bagely*, 473 U.S. at 681-82; *see also Campbell v. Polk*, 447 F.3d

270, 276 (4th Cir. 2006) (holding that even if evidence favorable to defendant was suppressed by the government, the suppression was not material because of the extensive additional evidence of defendant's guilt that was adduced at trial). Paz's statement represented only part of the government's case against Rivera; three other witnesses, Andy Salinas, Angel Barrera, and Luis Gamero, all testified to witnessing Rivera murder Diaz. In addition, one of Rivera's co-defendants, who was later acquitted, testified that he accompanied Rivera to the site of the murder and witnessed Rivera enter a wooded area with the victim and later return alone, covered in blood. In other words, the jury was presented with overwhelming evidence, quite apart from Paz's statement, that Rivera had killed Diaz. It is thus pellucidly clear that Rivera timely received the essential and relevant information contained in the documents he now claims were withheld; and moreover, it is equally clear that his failure to receive those specific documents did not deprive him of a fair trial or result "in a miscarriage of justice" *Brady* was designed to preclude. *Bagely*, 473 U.S. at 675. Rivera's *Brady* claim must therefore be denied.

Accordingly, for the foregoing reasons and for good cause,

It is hereby **ORDERED** that petitioner's motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 is **DENIED**.

Should petitioner wish to appeal this Order he must do so within sixty (60) days pursuant to Rules 3 and 4, Fed. R. App. P.

The Clerk is directed to send a copy of this Order to all counsel of record.

\_\_/s/_____
Alexandria, Virginia                    T. S. Ellis, III
July 10, 2007                            United States District Judge